| | |
|---|---|
| **DRAPER, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| *vs.* | )   **CAUSE NO. 1:10-cv-1443-SEB-DKL** |
| | ) |
| **MECHOSHADE SYSTEMS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

### Plaintiff's Motion to Compel [doc. 64]

In response to Defendant MechoShade Systems, Inc.'s motion to dismiss this suit

for lack of personal jurisdiction, Plaintiff Draper, Inc. moved for a stay of the motion

and leave to conduct jurisdictional discovery. The parties briefed the standards for

general and specific jurisdiction and the propriety of the discovery that Draper

proposed to serve on MechoShade. The Court overruled MechoShade's objections,

granted Draper's motion for limited jurisdictional discovery, and stayed MechoShade's

motion to dismiss pending the discovery. [Doc. 51.] The discovery served by Draper

on MechoShade consisted of 5 interrogatories, 15 requests for production, 1 Rule

30(b)(6) deposition, and 2 additional depositions.[1] Dissatisfied with MechoShade's

production, Draper filed the present motion to compel. The parties' dispute concerns

---

[1] Draper also undertook some third-party discovery, particularly of Interspec,
MechoShade's Indiana representative.

the sufficiency of MechoShade's responses to Draper's requests for production and Rule 30(b)(6) deposition.

Draper contends that discovery obtained from third parties and other discovery reveal that MechoShade is in possession of additional responsive documents and information. MechoShade responds that (1) Draper's discovery requests are overly broad, reaching far beyond the limited jurisdictional discovery authorized by the Court; (2) producing the additional material would be unduly burdensome and costly, and not likely to lead to relevant information; and (3) Draper's jurisdictional arguments underlying the discovery it seeks to compel are collaterally estopped by a decision of the United States District Court for the District of Colorado in a parallel case filed by Draper. Draper also contends that MechoShade's designated Rule 30(b)(6) representative was unable to adequately testify regarding several of its noticed subjects and it wants a supplemental deposition with a different representative.

The Court first dispenses with MechoShade's collateral-estoppel argument. Although the present parties were also parties in the Colorado suits, the issues decided by the district court in Colorado pertained to whether *that* court had personal jurisdiction over MechoShade based on its contacts with *Colorado*. Because the issue of *this* Court's jurisdiction over MechoShade based on its contacts with and activities *in Indiana* were not before the Colorado court, its decision does not preclude any arguments by Draper here. Furthermore, to the extent that MechoShade argues that the

Colorado District Court's interpretations and applications of the governing law binds this Court's analysis, MechoShade is reminded that a district judge's decision, especially one from another district, has no precedential authority for any judge or court here. See, *e.g.*, *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993) ("A district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not *stare decisis*) apply.").

The Court agrees with MechoShade that what was intended to have been limited jurisdictional discovery has become an expansive and expensive foray through its files. Thousands of documents have been produced and likely thousands more are sought by way of the current motion. Courts have discretionary power under the Federal Rules and inherent power to limit and control jurisdictional discovery, and they should exercise that authority to ensure that jurisdictional discovery does not conflict with the purposes and protections of personal jurisdiction. Fed. R. Civ. P. 26(b)(2)(C). See *York v. Tropic Air, Ltd.*, Civ. A. No. V-10-55, *Memorandum Opinion and Order*, 2011 WL 5827299, *1 (S.D. Tex., Nov. 17, 2011); *Nu Image, Inc. v. Does 1-23,322*, 799 F.Supp.2d 34, 36-37 (D. D.C. 2011); *Insubuy, Inc. v. Community Insurance Agency*, No. 10 C 3925, 2010 WL 4659483 (N.D. Ill., Nov. 9, 2010) ("As with all discovery matters, district courts have broad discretion in determining when additional jurisdictional discovery is appropriate.") (citing *GCIU–Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023, 1026 (7th Cir. 2009)); *Himoinsa Power Systems, Inc. v. Power Link Machine Co., Ltd.*,

No. 08-2601-MLB, *Memorandum and Order*, 2010 WL 2265160 (D. Kan., June 2, 2010).

It is well established that a federal district court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of personal jurisdiction. That much is evident in *Insurance Corp. of Ireland*, and the circuit courts have frequently made the point. *E.g.*, *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994) (where facts relevant to jurisdiction were ambiguous, district court erred in denying discovery); *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) (district court erred in limiting jurisdictional discovery where plaintiffs made specific allegations of conspiracy to support personal jurisdiction); *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991) (court may permit discovery in aid of deciding Rule 12(b)(2) motion, and **scope of such discovery is committed to district court's sound discretion**); *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir.1986) (discovery should ordinarily be granted where pertinent jurisdictional facts are disputed, but **district court has discretion to control scope of discovery**); *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982); *Fraley v. Chesapeake & Ohio Ry. Co.*, 397 F.2d 1, 3–4 (3d Cir. 1968) (district court erred by refusing to require defendant to answer interrogatories to explain ambiguous assertions in its affidavits about scope of business activities within jurisdiction); *Surpitski v. Hughes–Keenan Corp.*, 362 F.2d 254, 255–56 (1st Cir. 1966) (where plaintiff was "total stranger" to defendant, district court erred in dismissing for lack of personal jurisdiction without giving plaintiff opportunity for discovery).

However, a plaintiff is not always entitled to discovery to respond to a motion to dismiss for lack of personal jurisdiction. **Using their power to control discovery, courts should take care to ensure that litigation of the jurisdictional issue does not undermine the purposes of personal jurisdiction law in the first place**.

*Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308 (S.D. Ind. 1997) (emphases added). It is time

that control is exercised over jurisdictional discovery in this case and move this

preliminary phase of the litigation to completion.

The Court will separately address each category of documents that Draper seeks

from MechoShade.

**1. Commission Reports and Bookings Reports.**[2]  Draper contends that, in its financial-related productions, MechoShade focused only on direct sales to Indiana, but that direct sales do not capture all of MechoShade's "business" in Indiana. MechoShade's Commission Reports and Bookings Reports are the only documents produced so far that capture all of its business activity in the state, according to Draper. Commissions are paid to MechoShade's representatives for (1) sales of products to customers in Indiana, (2) sales of products to customers outside of Indiana when the products will be installed in projects located in Indiana, and (3) products that are specified[3] in Indiana regardless of the location of the project in which the products will be installed.  "Thus," Draper contends, "each time a MechoShade representative receives a commission, MechoShade has some form of a business contact with the state of Indiana.  Accordingly, these Commission Reports are highly relevant to the jurisdictional analysis."  (*Brief in Support* at 13).

Bookings Reports also capture commissions, but also "new bookings (*i.e.*, potential projects) and budgets . . . ."  (*Id.* at 14).  They are a "much higher level of a

---

[2] In this Order, the Court uses the shorthands and descriptors that are used by the parties in their briefing.

[3] Specification refers to the process of composing the detailed lists of materials, products, dimensions, *etc.* of the components of a construction project that will comprise the requirements for a solicitation of bids.  Project specifications can be written, at least in part, by architects, decorators, and dealers.

summary or review of MechoShade's business activity in Indiana, but nonetheless are clearly relevant to MechoShade's business contacts in Indiana." (*Id.*).

MechoShade produced Commission Reports and Bookings Reports only for its Indiana representative, Interspec, Inc., for the period 2006-2010. It produced no Reports for any other representative or MechoShade employee who was responsible for MechoShade's business in Indiana. Draper contends that these reports will show the volume of MechoShade's business activity in and contacts with Indiana, beyond just sales to customers located in Indiana because the Reports will show the commissions paid for products that were not sold to customers in Indiana but which represent business activity in or contacts with Indiana. As an example, Draper asserts that the Commission Reports for Interspec "show approximately $1,000,000 in sales related to Indiana since 2006 that MechoShade did not identify in the other financial documents it produced." (*Id.* at 13-14).

Draper does not indicate which of its requests for production cover the reports but contends that MechoShade "apparently does not dispute" that the reports are covered because MechoShade produced the reports for Interspec from 2006-2010. (Draper's *Brief in Support* [doc. 66-1] at 12). It asserts only that the reports "relate to the first general category of information relevant to the general jurisdictional analysis: the volume of MechoShade's business in Indiana." (*Id.* at 12).

In its response, MechoShade directly addressed only the Bookings Reports, and only as an example of its general objection that Draper has not shown a need for the additional documents:  it argues that the Bookings Reports "do not provide any additional information concerning MechoShade's in Indiana [*sic*] that Draper does not already have.  Nor has Draper met its burden of showing what ***additional*** information the Bookings Reports will reveal beyond what Draper already has that would establish general jurisdiction." (*Defendants' Brief in Opposition* [doc. 74] at 10.)  Draper does not address this objection in its reply.  MechoShade also generally argues (with regard to all of the categories of documents sought by Draper) that Draper's discovery has already become excessive, Draper has not shown that the additional materials that it seeks are necessary for it to respond to the pending motion to dismiss, and that production of the requested additional documents will be overly burdensome.

Production of the Commission Reports and Bookings Reports are not warranted by Draper's requests for production.[4]  **Requests 1 and 2** ask for "All Documents Relating to MechoShade's sales of the '428 Products [and the "Trade Dress Products"] in Indiana."  Draper argues that the Commission Reports and Bookings Reports will capture all of MechoShade's *business* and *contacts* in Indiana.  They might, but these Requests are limited to documents relating to *sales* of *specific products* in Indiana — they

---

[4] *MechoShade's Responses to Draper's First Set of Requests for Production*, attached as Exhibit 1 to the *Declaration of Andrew M. McCoy* [*etc.*] in support of *Draper, Inc.'s Motion to Compel* [*etc.*] [doc. 65-1].

do not encompass all of MechoShade's contacts or other business activity relating to Indiana or all of its products. Draper complains that the Reports produced for Interspec show approximately $1,000,000 of "sales related to Indiana" that were not reflected in MechoShade's other financial production, but Draper has mistaken the relationship required in Requests 1 and 2: both request documents *relating to sales in Indiana*, not documents *relating to sales relating to Indiana*. While the Commission Reports record commissions paid for products not *sold* in Indiana but *installed* or *specified* in Indiana, and therefore can be argued to provide evidence of *business activity affecting, and contacts in*, Indiana, that information is beyond the scope of Requests 1 and 2.

The Commission Reports also include commissions paid for sales in Indiana. While an analysis of these sales commissions might tend to show the amount of MechoShade's Indiana sales for the identified products (depending on whether the commissions are calculated in direct proportion to sales) and, thus, it can be argued that the Reports fall within the literal scope of Requests 1 and 2, Draper has not shown good cause to believe that the voluminous documents MechoShade has already produced do not sufficiently show its sales in Indiana. MechoShade asserts that it has already produced better and more direct evidence of its Indiana sales for the two categories of products and Draper did not controvert the assertion. Thus, it appears, without more, that Draper's requests are duplicative.

Draper did not show how the additional information on "new bookings (*i.e.*,

potential projects), and budgets" contained in the Bookings Reports is related to
MechoShade's sales of the '428 or trade-dress products in Indiana, and a relationship is
not obvious.

Draper's motion to compel MechoShade to produce its Commission Reports and
Bookings Reports for other representatives and employees is denied under Requests 1
and 2 because the documents are beyond the scope of the Requests and Draper has not
made a good-cause showing of need for them.

**Request 3** asks for documents showing the number and gross revenue of any
product sold or offered for sale by MechoShade in the United States.  Again, Draper
does not assert that MechoShade has failed to adequately responded with documents
showing the numbers of its products sold in the United States or the gross revenue
generated thereby.

**Request 4** (marketing materials for products sold or offered for sale in Indiana),
**Requests 5 and 6** (communications between MechoShade and third parties and
between MechoShade and Draper relating to Draper, the MechoShade patents,
MechoShade's alleged trade dress, and the accused products), **Requests 7 and 8** (license
agreements), **Request 11** (assignments of the '428 patent), **Requests 12 and 14**[5]
(documents used or referenced in declarations), and **Request 15** (MechoShade's bid

[5] There is no Request 13.

protests) do not cover the Commission Reports and Bookings Reports.

The scope of **Request 9**'s request for "All Documents Relating to Any contacts You have had with Any Person in Indiana in the last five (5) years" is too broad for the limited purpose of jurisdictional discovery and will not be enforced as is. Draper did not fully describe the nature of the Commission Reports or Bookings Reports, but they appear to be internal records of MechoShade and not themselves communications or contacts made with persons in Indiana. But they relate to contacts with persons in Indiana — specifically, the payment of commissions to them — and, thus, could indicate business activity by MechoShade in Indiana. Draper has not asserted that MechoShade has failed to produce sufficient documents showing its sales in Indiana, so it has not shown a need for documents relating to commissions in order to verify or discover the amounts of MechoShade's annual Indiana sales. However, Draper has shown that commissions can be paid to persons in Indiana for non-sales activity, namely, the specification in Indiana of MechoShade products for projects not located in Indiana.

Therefore, MechoShade shall produce summaries for each year, beginning 2007 until the date of suit, showing the total annual number and total annual amount of commissions paid to representatives in Indiana on account of (1) sales of MechoShade products to customers in Indiana and (2) specifications in Indiana of MechoShade's products regardless of where the projects for which the specifications were made are

located. MechoShade need not produce the Commission Reports or Bookings Reports or identify the representatives to whom the commissions were paid, the amount of each commission, or the projects for which the commissions were paid. The accuracy of the summaries shall be verified by affidavit or declaration.

**Request 10** asks for all documents relating to any of MechoShade's distributors, dealers, retailers, and/or agents doing business in Indiana. This Request is overly broad for the limited purpose of jurisdictional discovery if interpreted to include the subject reports and will not be enforced as is. Draper has shown that commissions paid to specifiers in Indiana of products not sold in Indiana are direct evidence of business activity in Indiana (payments of commissions, promotions of sales) that is not captured by in-state sales data and are, therefore, relevant to the jurisdictional analysis. Production of this information is ordered above. Draper has also shown that commissions paid to representatives outside of Indiana on account of products that are sold to customers outside of Indiana but which are installed in Indiana are indirect evidence of business activity (installations of products) in Indiana not captured by in-state sales data. Draper has not shown how any other content of the Commission Reports and Bookings Reports are likely to be relevant to the general-jurisdiction analysis.[6]

---

[6] The only content other than commissions that was described was that the Bookings Reports contain information on "new bookings (*i.e.*, potential projects), and budgets." (*Brief in Support* at 14). On its face, this content does not appear likely to show business activity in Indiana and Draper offered no explanation. Any relationship

Rather than order production of the Commission Reports as only indirect evidence of in-state installations, and in the interest of controlling and streamlining this stage of *limited* jurisdictional discovery, the Court prefers to order MechoShade to produce direct information of in-state installations of products sold out-of-state. Production is ordered below of information showing installations performed by MechoShade in Indiana of '428 and trade-dress products. In response to Request 10, MechoShade shall also produce annual summaries of installations in Indiana performed by others of the same products that were sold outside of Indiana, as shown by the Commission Reports and Bookings Reports. The summaries shall cover the period of 2007 until the date of suit, and shall show the number of installations and the dollar value of the products installed, to the extent that this information is shown by the Commission Reports and the Bookings Reports.[7] The accuracy of the summaries shall be verified by affidavit or declaration.

**Time Period.** Draper sought production of documents "since at least 2000" (and presumably to the date of its filing suit). The reports that MechoShade produced apparently dated "from 2006 to 2010." Preliminary jurisdictional discovery should not

of information on potential future projects and budgets to actual business activity conducted in Indiana appears too attenuated to warrant production of the Bookings Reports.

[7] Presumably, the commissions paid to out-of-state representatives are based on the value of the products sold. Depending on the formula for calculating the commissions, MechoShade will be able to give more or less accurate values for the value of the in-state installed products.

be allowed to take on a life of its own, overwhelming defendants with burdens that are inconsistent with a limited appearance for the purpose of challenging jurisdiction. Courts should also carefully monitor and control discovery of commercially sensitive information to ensure that it is narrowly tailored and likely to lead to information relevant to the jurisdictional issues at hand. For the purpose of establishing general personal jurisdiction on the date of filing, discovery relating to the period of 2007 to the filing of suit — three years and eleven months of data — should be sufficient to show MechoShade's relevant business activity in Indiana. In all of the productions ordered herein, MechoShade is not required to produce responsive documents pertaining to any period prior to 2007 or after the filing of this suit.

**2. Communications with dealers, architects, and other specifiers, and end users.** Draper wants the Court to compel MechoShade to produce all documents relating to its business contacts with dealers, specifiers,[8] and end users in Indiana. According to Draper, MechoShade focuses a substantial part of its business establishing relationships with specifiers and dealers as a way to increase sales of its products. It wants the Court to order MechoShade to produce "all documents relating to contacts it has had with any dealer or specifier in Indiana." (*Brief in Support* at 16).

---

[8] Construction projects use specifications of project components that assist dealers in bidding on the projects. MechoShade works with persons or entities that write these specificactions (*e.g.*, architects, interior designers, and dealers) in order to encourage them to specify MechoShade products.

Draper asserts that "most of what it has learned about MechoShade's business model and its contacts with dealers and specifiers came from Interspec, which produced *ten times* more e-mail correspondence than MechoShade." (*Brief in Support* at 16). Draper contends that the documents it seeks are covered by its Requests 1, 2, 3, 9, and 10.

**Requests 1 and 2** ask for documents relating to *sales* of specified MechoShade products, not all communications or contacts with dealers, specifiers, or end users. As noted above, Draper has not shown that it does not already have sufficient information showing MechoShade's sales in Indiana. Thus, Draper has not shown that it needs documents showing all contacts with dealers, specifiers, and end users for the purpose of determining MechoShade's Indiana sales. But Draper wants documents showing these contacts in order to show MechoShade's in-state activities directed to building relationships with dealers, specifiers, and end users for the ultimate objective of soliciting or promoting future in-state sales.[9] While sales-solicitation and sales-promotion activities do constitute business activity, they are not fairly within Requests 1's and 2's scope of documents "relating to . . . sales of the '428 Products [and "Trade Dress Products"] in Indiana." These requests are properly construed as seeking documents showing or providing evidence of the amount of MechoShades sales in

---

[9] Thus, Draper's request for documents relating to *all* contacts with dealers, specifiers, and end users in Indiana is far too broad and not narrowly tailored to the limited jurisdictional issues.

Indiana, not documents having any tangential relation to the subject of sales, whether marketing, advertising, customer development, or post-sale repairs, payment disputes, bill collection, *etc.*

Draper's assertion that **Request 3** asks for "documents relating to sales and offers to sell MechoShade's products" is simply incorrect. The language of this Request asks for "All Documents showing the *number* of products and *gross revenue* of Any product sold or offered for sale by MechoShade in the United States."[10] (Emphasis added.) All of MechoShade's communications with dealers and specifiers is not reasonably likely to show those facts — neither are MechoShade's contacts with specifiers and dealers for the purpose of soliciting or promoting sales. Draper did not assert that it does not already have sufficient production which shows the number of products sold by MechoShade in the United States or the gross revenue generated thereby.

**Request 9** asks for all documents relating to any contacts Mechoshade has had with any person in Indiana for the last five years. **Request 10** is not restricted to contacts but seeks documents relating in any way to MechoShade's distributors, dealers, retailers and/or agents doing business in Indiana. As such, both requests are too broad for the limited purposes of jurisdictional discovery. Because they are not narrowly tailored to obtain specific information likely to be relevant to the existence of

---

[10] It is unclear what Draper means by documents relating to the number of products and gross revenue of any such products offered for sale but not sold.

general jurisdiction over MechoShade, these Requests will not be enforced as written. However, MechoShade's in-state sales-solicitation and sales-promotion contacts with Indiana dealers and specifiers are relevant to the issue of general jurisdiction over MechoShade.

Taking Requests 9 and 10 in combination, and giving them a proper scope, the Court finds that Draper is entitled to production of documents showing or evidencing sales-solicitation or sales-promotion contacts it has had in Indiana with any dealer or specifier located in Indiana. In addition, consistent with the time frame set forth above, MechoShade is entitled to such documents showing or evidencing such contacts that occurred during the period of 2007 to the date of filing of this suit.

**3. Marketing and advertisements that reached Indiana.** Request 4 asks for "All Documents Relating to Any marketing materials, advertisements, brochures, catalogs, flyers, or commercials Related to Any product sold or offered for sale by MechoShade in Indiana." Draper asserts that, while MechoShade produced responsive documents, Draper has discovered, from Interspec's production, several e-mails sent to Interspec from MechoShade's marketing department. In the one e-mail that Draper submitted, a MechoShade marketing intern forwards a potential-customer lead to Interspec, specifically a person who viewed MechoShade postings on a third-party website and took an online test. The e-mail asks the Interspec addressee to "contact the individual as you would any lead that we may refer to you." This e-mail is clearly not an

advertisement, brochure, catalog, flyer, or commercial; if it is included within Request 4, it can only be as "marketing material." In the context of the other requests, it is reasonable to construe "marketing material" as meaning pre-prepared materials targeted at potential customers, not individually-generated, incidental communications like periodic lead-referral e-mails.[11] However, because MechoShade did not contest the applicability of Request 4 to lead-referral e-mails, the Court will assume its applicability in this instance. Draper asks the Court to order MechoShade to produce "all marketing materials (including at least any e-mails and e-mail attachments sent from MechoShade's marketing e-mail addresses to Interspec and any other person or company in Indiana) and documents relating to advertisements in any publication or periodical that reaches Indiana." (*Brief in Support* at 17).[12]

Granting that the lead-referral e-mail submitted by Draper qualifies as "marketing material," they tend to show MechoShade's sales-solicitation or business activity in Indiana and are, thus, relevant to the jurisdictional analysis. However,

---

[11] "Marketing material" might differ from the other terms of the Request — "advertisement, brochure, catalog, flyer, or commercial" — by encompassing, for example, mass-distributed e-mails, expositions displays, individual DVDs.

[12] Draper thus narrows the scope of Request 4. The Request does not ask for marketing material, advertisements, *etc.* that are targeted at Indiana, or even that appear "in any publication or periodical that reaches Indiana." Rather, the Request broadly seeks all marketing material, advertisements, *etc.* for *products* that are sold or offered for sale by MechoShade in Indiana, regardless of whether the marketing material or advertisements are specifically directed to Indiana or even reach Indiana, or whether a lead-referral e-mail has an Indiana addressee or any relation to an Indiana lead.

neither the precise dates of the leads, the addressees, the source of the lead, nor the identifications of the leads is relevant. MechoShade must produce either (1) all lead-referral communications sent to a MechoShade representative or dealer in Indiana for the time period 2007 to the date of suit, (2) redacted lead-referral communications for the same time period with the irrelevant information removed, or (3) a summary showing, for each year 2007 to the date of suit, the number of leads referred by MechoShade to an Indiana representative (verified by affidavit or declaration). MechoShade is not ordered to produce all e-mails sent from its marketing addresses to any person or company in Indiana. Draper did not show that it is likely that MechoShade failed to produce any responsive documents other than e-mails or other documents containing lead-referral communications. MechoShade is reminded, however, that any marketing materials, advertisements, brochures, catalogs, flyers, or commercial advertisements in the form of, or attached to, an e-mail should be produced in response to Request 4.

Draper also points to MechoShade's Vice President's testimony that "MechoShade publishes ads in national publications that reach Indiana," (*Brief in Support* at 17), and asserts that such materials are relevant to the jurisdictional analysis, (*id.*). It then asks the Court to order MechoShade to produce "documents relating to advertisements in any publication or periodical that reaches Indiana." (*Id.*). However, Draper does not assert or show grounds to believe that responsive documents exist that

MechoShade has not produced.  Moreover, a request for *all* documents *relating to* all advertisements in any publication or periodical that reaches Indiana — including, *e.g.*, communications with ad developers, billing correspondence, and internal planning documents — is far too broad for the limited purposes of jurisdictional discovery. Therefore, there is no basis for ordering MechoShade to produce additional documents in response to this part of Request 4.

**4. Project files, field reports, and related documentation.**  MechoShade maintains "project files" consisting of records regarding construction projects in which its products are installed.  These files contain purchase orders, installation orders, work orders, field reports, warranty/repair orders, call logs, and other communications relating to each project.  Draper complains that MechoShade has not produced a single project file for any project in Indiana.  It argues that the project files are covered by its Requests for Production 1, 2, and 9.

As noted above, **Requests 1 and 2** ask for documents relating to sales of MechoShade's '428 Patent and trade-dress products in Indiana.  Draper has not shown how the project files will give a more accurate account of MechoShade's sales in Indiana than do the productions that it has already received.  Draper has also failed to show that the files are likely to provide evidence of any business-solicitation activity by MechoShade in Indiana.  See *Eli Lilly and Co. v. Mayne Pharma (USA) Inc.*, 504 F.Supp.2d 387, 394-95 (S.D. Ind. 2007); *Fanimation Design & Manufacturing, Inc. v. NICOR, Inc.*, No.

IP 02-576-C-M/S, *Order on Defendant's Motion to Dismiss*, 2003 WL 21766572 (S.D. Ind., July 17, 2003).  Also as previously explained, **Request 9**'s scope is too broad to enforce as is for the purposes of limited jurisdictional discovery.

However, the Court agrees with Draper that construction projects in Indiana for which MechoShade performed the installation of its product[13] or any later warranty/repair work constitute relevant business activity for the purpose of the general-jurisdictional analysis.  Without stretching the legitimate scopes of Requests 1, 2, and 9 too far, and in the absence of specific contrary argument by MechoShade, the Court concludes that Draper is entitled to information showing installations of '428 and trade-dress products performed by MechoShade on projects in Indiana for the year 2007 to the date of suit.  Similarly, Draper is entitled to information showing warranty/repair work performed by MechoShade in Indiana on the same products during the same time period.  However, in exercise of its discretion and for the purpose of controlling what was intended to be limited jurisdictional discovery, the Court does not compel MechoShade to produce its project files but requires it to compile and produce annual summaries of the relevant information showing the specified installations and warranty/repair work.  The summary shall include, for each Indiana project and for each work visit, all of the dates on which the work was performed,

---

[13] It was not clear from the cited evidence whether these installations generated separate, additional revenue to MechoShade or were already incorporated into the contract sales price for the project.

whether the work was installation or warranty-repair work, and, if the work generated additional revenue to MechoShade not already disclosed in its prior productions, the amount of that additional revenue. The accuracy of the summaries shall be verified by affidavit or declaration.

**5. Communications with Technical Support and the Estimating Department.**

For the same reasons as explained above for MechoShade's installation and warranty/repair work in Indiana, MechoShade shall produce annual summaries identifying technical assistance and proposals that it provided during the period 2007 until the date of suit to its representatives, dealers, specifiers, and end users located (1) in Indiana, regardless of the location of the projects for which the assistance was given, and (2) outside of Indiana for projects located in Indiana. The summaries shall provide, for each year, (a) the number of occasions that technical assistance was provided, (b) a breakout showing the number of in-state and out-of-state projects for which the assistance was provided, (c) the number of proposals that were provided, and (d) a breakout of the number of in-state and out-of-state recipients of the proposals. The accuracy of the summaries shall be verified by affidavit or declaration.

**6. MechoWeb.** Draper's request for access to MechoShade's intranet system *MechoWeb* is denied. MechoShade is reminded that, if it has not done so already, it is obligated to search all of its records, including those existing on *MechoWeb*, for responsive documents.

**7. Business reports.** Draper asserts that MechoShade "tracks" its top dealers, specifiers, projects, and end users "in an effort to increase its presence in Indiana." (*Brief in Support* at 21). It also requires its representatives to produce and/or update "business reports" which are weekly and monthly reports that "track[] various construction projects in each representative's territory." These reports include Project in Planning reports, Open Proposal reports, and Sales Objective reports. At least one of these business reports "also tracks the most recent presentation MechoShade and/or its representatives gave to a particular dealer or specifier." (*Id.*) Draper contends that, because these reports "are directly related to MechoShade's activities in soliciting new business in Indiana," they are relevant to jurisdiction and should be produced. Draper argues that the documents are covered by its Requests 1-3, 9, and 10.

In support of its request, Draper submitted examples of e-mails that MechoShade sent to Interspec (and produced as part of Interspec's production). These e-mails show that show that the "tracking" that Draper describes is MechoShade's request that each of its representatives send to MechoShade weekly or monthly reports of the top dealers, specifiers, architects, interior designers, projects, *etc.* in the representative's territory. In addition, MechoShade asks its representatives to send a "Sales Objective & Activities Report" on which they record certain information for each "Firm" in their territories. This information includes "Presentation Date," "Presentation Type," and "Presenter."

Because the representatives' reports of their "top lists" to MechoShade are not

evidence of sales-solicitation or other business activity by MechoShade in Indiana, they are irrelevant to the question of general jurisdiction. But presentations made by MechoShade or its representatives to potential customers in Indiana — *e.g.*, architects, specifiers, decorators, dealers — clearly constitute sales-solicitation activity in Indiana and are relevant to jurisdiction. However, because the rest of the information contained on the representatives' Sales Objectives and Activities Reports is irrelevant to the inquiry, MechoShade is not ordered to produce these Reports. Instead, MechoShade shall compile and produce summaries of the relevant information contained in these reports. Specifically, MechoShade shall disclose, for each year from and including 2007 until the date of suit, (1) the number of presentations MechoShade or its representatives gave to potential customers in Indiana regarding MechoShade's products, and (2) if available from the Sales Objectives and Activities Reports, the total number of customer attendees. Neither the dates of the presentations, the identities of the presenters, nor the identities of the attendees need be produced. The accuracy of the summaries shall be verified by affidavit or declaration.

**8. Lead generations / lead lists.** For the same reasons explained above regarding the third category of requests covering e-mailed lead referrals, MechoShade shall also produce complete or redacted copies of any non-email lead-referral documents or summaries thereof showing the same information required for the e-mailed referrals and for the time period.

**9.  Continuing education presentations in Indiana.**  For the same reasons explained above in regard to MechoShade's "business reports," continuing-education presentations on MechoShade's products given by MechoShade or its representatives in Indiana to former, current, or potential customers, dealers, architects, decorators, specifiers, *etc.* constitute relevant sales-solicitation activity in Indiana covered by a properly limited construction of Requests 1, 2, 4, and 9.  MechoShade shall compile and produce a summary showing all such presentations, identifying for each year from and including 2007 to the date of suit, the number of presentations and the number of attendees.  Neither the dates, locations, nor the attendees' or presenters' identities need be provided.  The accuracy of the summaries shall be verified by affidavit or declaration.

**10.  Home Systems.**  MechoShade did not dispute Draper's assertion that Home Systems is a division of MechoShade, and MechoShade did identify Home Systems' sales in Indiana in response to Draper's requests.  Draper asserts that its discovery requests should apply equally to Home Systems and asks for production of all responsive documents regarding Home Systems.  But Draper does not assert or provide any basis for finding or assuming that MechoShade has not already produced conforming responsive documents.  MechoShade is reminded that, if Home Systems is a division through or by which it conducts business activity in Indiana, then it must comply with Draper's requests and this Order with respect to Home Systems'

documents to the same extent as its own documents.

**11. Custodians search, disclosure of searches, supplementation of responses.**
Draper wants the Court to compel MechoShade to "adequately search the records of specified custodians," but it provides no basis for finding that it has not done so. We assume that MechoShade is aware of and is committed to complying with its discovery obligations and that, if it has discovered or has had pointed out to it any reason why a more intensive search for responsive documents is necessary, it will undertake one.

Although MechoShade has stated that it has performed reasonable searches for responsive documents and information, Draper wants the Court to compel it to identify the searches that it has performed; otherwise, "it is unclear just how 'reasonable' MechoShade's searches were." (*Brief in Support* at 24). Because Draper has shown no basis for finding that MechoShade's searches were unreasonable or incomplete, its request is denied. Finally, Draper wants the Court to compel MechoShade to supplement its previous discovery responses with any necessary changes or additions revealed by additional discovery ordered herein. Again, the Court assumes that MechoShade is aware of its continuing duty to supplement and correct it discovery responses.

**12. Supplemental Rule 30(b)(6) deposition of Norman Rathfelder.** Draper has sufficiently shown that MechoShade's designated Rule 30(b)(6) representative, Jan

Berman, was unprepared to adequately testify on the subjects that Draper noticed for the deposition.  Mr. Berman also identified Norman Rathfelder as the MechoShade employee who is most knowledgeable about the subjects on which Mr. Berman could not testify.  Draper requests only a four-hour deposition of Mr. Rathfelder.  (*Reply* at 9). Because MechoShade did not designate a representative who was knowledgeable about several noticed subject areas, and its designated representative identified Mr. Rathfelder as the proper representative, the Court grants Draper's request and orders MechoShade to make Mr. Rathfelder available for a supplemental Rule 30(b)(6) deposition not to exceed four hours.

**Specific jurisdiction.**  Draper contends that sufficient forum contacts exist for both specific and general jurisdiction over MechoShade.  Because the contacts required for specific jurisdiction are substantially less than for general jurisdiction, the parties are encouraged to focus their discovery efforts on facts and circumstances that are relevant to specific jurisdiction and to come to an agreement thereon if possible.[14]  However, after examining the parties' assertions and preliminary arguments regarding specific jurisdiction, the Court concludes that a stay of general-jurisdiction discovery and addressing the existence of specific jurisdiction is not warranted.

Draper asserts that, in addition to MechoShade's cease-and-desist

---

[14] Obviously, if the parties can yet come to an agreement on whether general jurisdiction exists, much of the production ordered herein (and resulting costs) would also be avoided.

communications sent to Draper in Indiana, MechoShade also (1) informed some of Draper's customers that Draper was infringing MechoShade's patent and trade dress and that the customers might be caught up in a lawsuit, and (2) initiated two bid protests against bids that included specifications for the allegedly infringing Draper products. These actions were intended to stop or disrupt some of Draper's business activity involving the accused infringing products. MechoShade and Draper also executed a "Rule 408 Settlement Negotiation Agreement" [doc. 22-4] and engaged in settlement negotiations,[15] however briefly, before this suit was filed. Cease-and-desist contacts alone are insufficient for specific jurisdiction; there must be additional extra-judicial enforcement activity. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998). While contacts with an alleged infringer's customers for the purpose of informing and/or threatening them regarding the alleged infringement, and bid protests against an infringer's products for the purpose of hindering the infringer's bid both qualify as extra-judicial enforcement activity supporting special jurisdiction, *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885-86, 997 (Fed. Cir. 2008) governing law from the Court of Appeals for the Federal Circuit holds that all such extra-judicial activities must occur in the forum state, not just have an effect on the alleged infringer's business activity in the forum state, *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785, 791-92 (Fed. Cir. 2011). The policy of encouraging settlements also argues against using

---

[15] The content of the negotiations was not described. Certainly, they were geared toward settlement of MechoShade's infringement assertions and threats of litigation, but it is unknown whether they also included licensing negotiations.

negotiations, even when combined with license discussions, as extra-judicial enforcement activities establishing special jurisdiction. See *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009); *Red Wing Shoe*, 148 F.3d at 1361. It appears that none of the customer-contacts or bid protests described so far occurred in Indiana. However, if the parties are aware of or become aware of additional qualifying extra-judicial activity, they are encouraged to focus their presentations to the Court on the present motion accordingly.

## Conclusion

Draper's *Motion to Compel* is **GRANTED IN PART** and **DENIED IN PART** as set forth above. It is time to determine whether the Court has personal jurisdiction over MechoShade. MechoShade shall complete the productions ordered herein no later than **February 24, 2012**. It shall make rolling productions as documents and summaries become ready to produce. Draper shall file its response to MechoShade's Motion to Dismiss no later than **March 14, 2012**. MechoShade may file a reply no later than **March 24, 2012**. The parties should not expect to receive extensions of these deadlines.

**SO ORDERED.**

Date: 01/30/2012

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

R. Trevor Carter
FAEGRE BAKER DANIELS LLP - Indianapolis
trevor.carter@faegrebd.com

Sid  Leach
SNELL & WILMER, LLP
sleach@swlaw.com

Andrew M. McCoy
FAEGRE BAKER DANIELS LLP - Indianapolis
andrew.mccoy@faegrebd.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com